UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARSHAK SHAH<br>    Plaintiff,<br><br>    v.<br><br>TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>and<br><br>TOYOTA MOTOR SALES, U.S.A., INC.<br><br>And<br><br>GENERAL MOTORS, LLC.,<br><br>    Defendants. | Civil Action No. _____ |

## CLASS ACTION COMPLAINT

Plaintiff DARSHAK SHAH ("Plaintiff"), individually, and on behalf of all persons similarly situated (the "Proposed Classes"), hereby brings this instant class action against TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., and GENERAL MOTORS, LLC (collectively, "Defendants"), and state as follows:

## PARTIES

1. Plaintiff Darshak Shah is, and at all times material was, a resident of 1250 Westford Street in Lowell, MA 01851, who purchased a 2010 Toyota Corolla that, as a result of sudden acceleration, was involved in an accident that resulted in major property damage to his car.

2.	Defendant TOYOTA MOTOR NORTH AMERICA, INC. is, and at all times material was, a California corporation with its principal place of business located at 19001 South Western Avenue, Torrance, California 90501.

3.	Defendant TOYOTA MOTOR SALES, U.S.A., INC. ("TMS") is, and at all times material was, a foreign corporation with its principal place of business located at 19001 South Western Avenue, Torrance, California 90501.

4.	Defendant GENERAL MOTORS, LLC, is, and at all times material was, a foreign corporation with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, 48265-3000.

5.	At all relevant times hereto, each of the Defendants acted as the agent of each of the other Defendants.

## JURISDICTION AND VENUE

6.	This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because at least one member of the Plaintiff's Classes is a citizen of a different state than the Defendants, there are 100 or more class members, and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

7.	Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims arose there and both Plaintiff and Defendants' resident agents reside there.

## FACTUAL BACKGROUND

8.	Defendant TOYOTA MOTOR NORTH AMERICA, INC. manufactures, markets and/or sells the following non-exclusive list of automotive vehicles: 2007-2010 Camry; 2009-2010 Corolla; 2005-2010 Avalon; 2004-2009 Prius; 2005-2010 Tacoma; 2007-2010 Tundra;

2009-2010 RAV4; 2009-2010 Matrix; 2008-2010 Highlander; 2008-2010 Sequoia; 2009-2010 Venza; 2007-2010 Lexus ES350; 2006-2101 Lexus IS250 and IS350; and 2009-2010 Pontiac Vibe.

9. Defendant TOYOTA MOTOR SALES, U.S.A., INC. manufactures, markets and/or sells the following non-exclusive list of automotive vehicles: 2009-2010 RAV4; 2009-2010 Corolla; 2009-2010 Matrix; 2005-2010 Avalon; 2007-2010 Camry; 2010 Highlander; 2007-2010 Tundra; 2008-2010 Sequoia; and 2009-2010 Pontiac Vibe.

10. Defendant GENERAL MOTORS, LLC, manufactures markets and/or sells the following automotive vehicle in partnership with and manufactured by Defendants TOYOTA MOTOR NORTH AMERICA, INC. and TMS: 2009-2010 Pontiac Vibe

11. On January 21, 2010, Defendants announced they would recall approximately 2.3 million vehicles to correct sticking accelerator pedals on specific Toyota Division models (the "Accelerator Recall"). Defendants said the accelerator pedals can become worn and difficult to operate or stick in a partly depressed position.

12. The Accelerator Recall is separate from the ongoing September 29, 2009, NHTSA recall notice of approximately 4.2 million Toyota and Lexus vehicles to reduce the risk of pedal entrapment by incorrect or out of place accessory floor mats.

13. Approximately 1.7 million Toyota Division vehicles are subject to both separate recall actions. *See* http://pressroom.toyota.com/pr/tms/toyota/toyota-files-voluntary-safety-152979.aspx.

14. Similarly, on February 9, 2010, Defendant's announced it would recall approximately 450,000 Prius vehicles to correct brake problems.

15. Upon information and belief, on February 4, 2010, the National Highway Traffic

Safety Administration said it had opened a formal investigation into the 2010 model Prius after getting 124 complaints from drivers of a brief loss in braking power, which has been blamed in four crashes, two of which resulted in injuries. There have also been numerous complaints from consumers relating to the Prius' headlights.

16. In 2009, Defendants reported that they sold 1,770,149 cars and trucks, for a net income of $4.33 billion, and a market share of 18.2 percent. In 2008, Defendants report that they sold 2,217,662 cars and trucks. *See*, http://online.wsj.com/mdc/ public/page2_3022-autosales.html.

17. In a recent press release regarding the safety recall of the 2.3 million vehicles affected by the sticking accelerator, Defendant TMS's Vice President, Irv Miller, stated "our investigation indicates that there is a possibility that certain accelerator pedal mechanisms may, mechanically stick in a partially depressed position or return slowly to the idle position." *See,* http://pressroom.toyota.com/pr/tms/toyota/ toyota- files-voluntary-safety-152979.aspx.

18. Recent court cases, congressional investigations, documents from the NHSTA, and notices from insurers, indicate that Defendant Toyota has been hiding and destroying documents, has a corporate culture of failing to respect the American consumer, and has been avoiding mounting evidence of problems with their vehicle safety dating back to 2004 and earlier.

19. The sticking accelerator condition can occur making the accelerator pedal harder to depress, slower to return or, in the worst case, stuck in a partially depressed position leading to injury and/or death. Purchasers and/or lessees of these vehicles concerned about potential defects have been advised not to drive the vehicles until repaired.

20. Furthermore, electromagnetic interference with the electronic throttle control of

the various models may independently be causing Toyota's electronic throttle control systems to malfunction, which could also be a cause of the sudden acceleration experienced in many Toyota automobiles.

21.     As a result, Plaintiff and other Massachusetts and National purchasers and/or lessees of the Toyota automotive vehicles manufactured by the Defendants, listed in the foregoing paragraphs, have paid more than they would have for the product (currently reported in national car market reports, such as Kelley Blue Book, NADA, and Edmunds from 2-6 percent reduction in value), and have been harmed as a result of the diminished value of the vehicles purchased and the non-use of the vehicles.

22.     It is clear that a car with a potential defective acceleration pedal, electromagnetic interference, defective brakes, and one where the defect is still unknown but verified, is worth less than one with no concern over potential defective acceleration pedal, brakes or other conditions. In other words, consumers did not get what they bargained for. It is also clear that non-use of the vehicle pending fears of vehicle safety and successful repair is a loss of use and value to the purchaser.

23.     The actual damages are the difference in the market value of the Toyota, Lexus, and GM vehicles in the condition in which it was delivered, namely defective, and the market value in the condition in which it was delivered according to the contract of the parties, as well as the loss of use of the vehicles for days, weeks, or months, pending successful repair.

24.     The actual damages suffered by Plaintiff and members of the Proposed Classes are the difference in the market value of the Toyota, Lexus and GM vehicles in the condition in which it was delivered, namely defective, and the market value in the condition in which it was delivered according to the contract of the parties, as well as the loss of use of the vehicles for

days, weeks, or months, pending successful repair.

25. Defendants had knowledge of a design defect regarding the accelerator pedal and/or the electromagnetic interference as early as 2007, but withheld publication of the data results for *almost three years*. Defendants made production changes in August of 2009 for models in Europe, and were aware of this problem in Europe as early as April and May of 2009. Yet, in the United States, Defendants did not respond to these same concerns and protection of American consumers, until after officials from the Federal Department of Transportation personally flew to Japan to remind Toyota, and wake them up about the seriousness of its obligations to the American purchasers.

26. Federal officials in the press described Defendants as maybe "a little safety dead."

27. Meanwhile, despite knowledge of this information and taking preventative steps in Europe, Defendants continued to manufacture, market and/or sell automotive vehicles affected with said defect until directly requested by the Federal Department of Transportation officials.

28. In September 2007, Toyota recalled an accessory all-weather floor mat sold for use in some 2007 and 2008 model year Lexus ES 350 and Toyota Camry vehicles because of similar problems, thereby proving that Defendants had knowledge since at least 2007 of this safety problem affecting the previously listed automotive vehicles.

29. Defendants' various recalls have, upon information and belief, sparked several probes by federal and congressional investigators, who plan to look at whether the electronic systems in Defendants' automobiles could cause the problem.

**CLASS REPRESENTATION ALLEGATIONS**

30. Plaintiff incorporates the foregoing paragraphs as though fully set forth at length herein.

31.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) on behalf of the following classes:

### A.     Massachusetts Class Definition

All individuals, entities, and organizations who are residents of Massachusetts and who are owners of any of the following: 2007-2010 Camry; 2009-2010 Corolla; 2005-2010 Avalon; 2004-2009 Prius; 2005-2010 Tacoma; 2007-2010 Tundra; 2009-2010 RAV4; 2009-2010 Matrix; 2008-2010 Highlander; 2008-2010 Sequoia; 2009-2010 Venza; 2007-2010 Lexus ES350; 2006-2101 Lexus IS250 and IS350.  "Owners" include those who lease the vehicles.  The class does not include any judge who handles any aspect of this case, or any defendant or executive of any defendant.

### B.     National Class Definition

All individuals, entities, and organizations who are residents of the United States and who are owners of any of the following: 2007-2010 Camry; 2009-2010 Corolla; 2005-2010 Avalon; 2004-2009 Prius; 2005-2010 Tacoma; 2007-2010 Tundra; 2009-2010 RAV4; 2009-2010 Matrix; 2008-2010 Highlander; 2008-2010 Sequoia; 2009-2010 Venza; 2007-2010 Lexus ES350; 2006-2101 Lexus IS250 and IS350.  "Owners" include those who lease the vehicles.  The class does not include any judge who handles any aspect of this case, or any defendant or executive of any defendant.

32.     Membership in the Proposed Classes is so numerous as to make it impractical to bring all of the Proposed Class members before the Court.  The exact number and identity of the Proposed Classes is unknown; however, Plaintiff knows that there are millions of persons in the Proposed Classes.  Plaintiff is a member of both of the Proposed Classes.

33.     There are numerous and substantial questions of law and fact common to the

Proposed Classes which control this litigation, and which predominate over any individual issues. Included within the common questions are:

    a. whether Defendants had knowledge of the design defect prior to its issuance of the current safety recall affecting millions of vehicles;

    b. whether Defendants concealed the design defect affecting the following models of automotive vehicles: 2007-2010 Camry; 2009-2010 Corolla; 2005-2010 Avalon; 2004-2009 Prius; 2005-2010 Tacoma; 2007-2010 Tundra; 209-2010 RAV4; 2009-2010 Matrix; 2008-2010 Highlander; 2008-2010 Sequoia; 2009-2010 Venza; 2007-2010 Lexus ES350; 2006-2101 Lexus IS250 and IS350; 2009-2010 Pontiac Vibe;

    c. whether Defendants misrepresented the safety of the automotive vehicles at issue;

    d. whether Defendants' actions or omissions with regard to the select models of vehicles violate Massachusetts and other various state consumer protection statutes;

    e. whether Defendants warranted the vehicles for a particular purpose for which they are unfit or ineffective;

    f. whether Plaintiff and the Proposed Classes conferred non-gratuitous benefits on Defendants in the absence of a contract;

    g. whether Defendants retained such non-gratuitous benefits from Plaintiffs;

    h. whether Defendants' maintenance of such non-gratuitous benefits is unjust or inequitable;

    i. whether Plaintiff and the Proposed Classes are entitled to damages, restitution, equitable relief and other relief; and

    j. the amount and nature of such relief to be awarded to Plaintiff and the Proposed Classes.

34.     Plaintiff's claims are typical of the claims of the Proposed Classes, and Plaintiff has no interest adverse to the interests of the members of the Proposed Classes.

35.     Plaintiff will fairly and adequately protect the interests of the Proposed Classes and have retained class action counsel experienced and competent in the prosecution of class

actions and complex litigation for over 15 years. Plaintiff is willing to appear at depositions, assist counsel in the prosecution of the action and subserve their own interests for those of the Classes. Plaintiff will give complete support to the vigorous prosecution of the entire Proposed Classes' claims.

36. Adjudications with respect to individual members of the Proposed Classes would, as a practical matter, be dispositive of the interests of other members of the Proposed Classes who are not parties to the adjudication and may impair and impede their ability to protect their interests.

37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, the Proposed Classes will continue to suffer damages and Defendants' violations of law will proceed without remedy.

38. As a result, Massachusetts and National purchasers and/or lessees of Toyota automotive vehicles manufactured by the Defendants paid more than they would have for the product, and have been harmed as a result of the diminished value of the vehicles purchased and/or leased.

39. Most individual members of the Proposed Classes have little ability to prosecute an individual action, due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual members of the Proposed Classes.

40. This action will result in the orderly and expeditious administration of the Proposed Classes members' claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

## COUNT I

## BREACH OF EXPRESS WARRANTY

41.     Plaintiff incorporates the foregoing paragraphs as though fully set forth at length herein.

42.     Defendants expressly warranted and represented that Toyota automotive vehicles were merchantable and fit for use for particular purposes at the time of the purchase and sale. These warranties became part of the basis of the bargain and Plaintiff and the Proposed Classes' Members did rely on the express warranties of Defendants.

43.     Defendants' malfunctioning and/or defective automobiles were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of purchase and sale.  Such automobiles did not conform to Defendants' express warranties and representations.

44.     As a direct and proximate result of Defendants' breach of the express warranty of fitness for a particular purpose, of which Defendants were or should have been aware, Plaintiff and the Proposed Classes have been damaged, estimated at more than $5,000,000, as a result of the diminished value of the Defendants' products, the products' malfunctioning and the non use of their vehicles.

45.     Plaintiff and the Classes' Members are entitled to damages, including the diminished value of their automobiles and non use of the vehicles pending successful repair as a result of the defective accelerator pedals and brakes that are affected by the instant safety recall, in addition to any costs associated with purchasing safer vehicles, incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

## COUNT II

## BREACH OF IMPLIED WARRANTY

46. Plaintiff incorporates the foregoing paragraphs as though fully set forth at length herein.

47. Defendants impliedly warranted that Toyota automotive vehicles were merchantable and fit for use for particular purposes at the time of the purchase and sale.

48. Plaintiff and the Proposed Classes' Members reasonably relied on the implied warranty of for a particular purpose.

49. Defendants' malfunctioning and/or defective automobiles were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of the purchase and sale.

50. As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, of which Defendants were aware, Plaintiff's Classes has been damaged, estimated at more than $5,000,000, as a result of the diminished value of the Defendants' products, the products' malfunctioning and the non use of their vehicles.

51. Plaintiff and the Classes' Members are entitled to damages, including the diminished value of their automobiles as a result of the defective accelerator pedals and brakes that are affected by the instant safety recall, in addition to any costs associated with purchasing safer vehicles, incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

## COUNT III

## UNJUST ENRICHMENT

52. Plaintiff incorporates the foregoing paragraphs as though fully set forth at length

herein.

53. Defendants had knowledge of the safety defect of select automotive vehicles.

54. Defendants failed to disclose the design defect of Toyota automotive vehicles to Plaintiffs and members of the Class either at the time of purchase or anytime thereafter prior to the recent recall.

55. During the class period, Plaintiff and the Classes' Members conferred upon Defendants, without knowledge of the safety condition affecting select models, the price and payment for these vehicles, which are benefits that were clearly non-gratuitous.

56. Defendants appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiff and the Classes' Members despite their knowledge of the defects affected the select automotive vehicle models.  Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and the Classes' Members under these circumstances is unjust and inequitable.

57. Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and the Classes' Members is unjust and inequitable, and Defendants should pay restitution in the manner established by the Court, in addition to any other equitable remedy the Court may choose to impose.

## COUNT IV

## FEDERAL CONSUMER PROTECTION

58. Plaintiff incorporates the foregoing paragraphs as though fully set forth at length herein.

59. Defendants have violated federal consumer protection statutes, including but not limited to 15 U.S.C.A. § 2304 *et seq,* (Magnuson-Moss Warranty Act).

60. Defendants had knowledge of the safety defect of select automotive vehicles.

61. Defendants failed to remedy without charge, within a reasonable time and without charge, the defect or malfunction after a reasonable number of attempts by some members of the Plaintiff class to repair such defect.

62. Pursuant to 15 U.S.C.A. § 2304(a)(4), Defendants are required to replace the vehicle or return the purchase price of the vehicle if Defendants fail to remedy the defect or malfunction.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff DARSHAK SHAH respectfully request this Honorable Court to enter judgment against the Defendants and other relief as follows:

a. Certifying this case is a class action pursuant to Federal Rule of Civil Procedure 23, appointing DARSHAK SHAH as Class Representatives and appointing THE LAW OFFICE OF EDWARD A. BRODERICK as class counsel.

b. Awarding damages, including treble and statutory damages, to the Plaintiff and the members of the Class.

c. Declaring that the Defendants have violated federal consumer protection laws, by making statements or intentional concealments which they know, or might through reasonable investigation have known, are untrue, deceptive or misleading, with the intent of selling their automotive vehicles in Massachusetts or increasing the demand for their products.

d. Enjoining the Defendants from selling automotive vehicles that have sticking accelerator pedals in Massachusetts.

e. Requiring the Defendants to recall their automotive vehicles that have sticking accelerator pedals that are in the stream of commerce.

f. Requiring the Defendants to provide the Plaintiff and the members of the Class with notices and warnings of the danger of driving vehicles with sticking accelerator pedals.

g. Awarding the Plaintiff and the class all costs of this action, including attorney fees and costs, pre-judgment and post-judgment interest; and

  h.  Granting such other relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues so triable.

          Respectfully Submitted,
          For the Plaintiff,


          __/s/_Edward_A. _Broderick_____
          Edward A. Broderick, BBO# 566826
          The Law Office of Edward A. Broderick
          727 Atlantic Avenue, Second Floor
          Boston, MA 02111
          Phone:  (617) 738-7080
          Ted@broderick-law.com

Dated: February 16, 2010

Tim Howard, Esq., J.D., Ph.D.
Florida Bar No.: 0655325
Howard & Associates, P.A.
John Rimes, Esq.
8511 Bull Headley Rd., Ste. 405
Tallahassee, FL 32312
ptim@aol.com, ti.howard@neu.edu
rimesjohn@aol.com

James F. Haggerty, Esq.
The Law Offices of James F. Haggerty
45 Broadway, 31st Floor
New York, NY 10006
National Toll Free: (866) 960-8648
Fax: (646) 619-4324
www.jamesfhaggerty.com

Norwood S. Wilner, Esq.
Florida Bar No.: 222194
Stephanie Hartley, Esq.
Florida Bar No.: 997846
Wilner Hartley & Metcalf
3127 Atlantic Blvd., Ste. 3
Jacksonville, FL 32207
(904) 446-9817
nwilner@whmlegal.com
shartley@whmlegal.com

Neil S. Sader, Esq.
The Sader Law Firm
4739 Belleview Avenue, Ste. 300
Kansas City, Missouri 64112-1364
(816) 561-1818
nsader@saderlawfirm.com

Richard A. Daynard, Esq., Ph.D.
360 Huntington Avenue
Boston, MA 02115
(617) 373-2026
r.daynard@neu.edu

Douglas Lyons, Esq.
Lyons & Farrar, P.A.
325 Calhoun Street
Tallahassee, FL 32301
(850) 222-8811
doug_lyons@comcast.net

Stephen A. Sheller, Esquire
Brian J. McCormick, Jr., Esquire
1528 Walnut St., 3rd Flr.
Philadelphia, PA 19102
(215) 790-7300
sasheller@sheller.com
bjmccormick@sheller.com

Larry Gornick, Esq.
Levin, Simes, Keiser & Gornick, LLP
44 Montgomery St., 36th Floor
San Francisco, CA 94104
(877) 575-4529
(415) 981-1270
lgornick@lskg-law.com

Eddie Farrah, Esq.
Charles Farrah, Esq.
Farrah & Farrah
10 W. Adams Street
Jacksonville, FL 32202
(904) 807-3112
efarah@farahandfarah.com
cfarah@farahandfarah.com